Good morning. Kara Hartzler, Federal Defenders, on behalf of Mr. Peralta. The question at the heart of this case is whether a non-citizen in expedited removal proceedings who is apprehended inside the United States has a right not to... Start all over again, will you? I'm sorry. Sure. Speak right into the microphone. All right. Is this better? Can you hear me? Yes. Is this better, Your Honor? Yeah, but don't talk too fast. I'll try, Your Honor. You know, somebody today, you know, I guess if... had this part of the way things go, if someone like Abraham Lincoln had to... was going to deliver the Gettysburg Address, you know, and said, four score seven years ago, our forefathers went forth and just got that new nation, you know, blah, blah, blah, blah, blah. You know... I'll do my best, Your Honor. It wouldn't be... it wouldn't be up there in marble. The question at the heart of this case is whether a non-citizen in expedited removal proceedings who is apprehended inside the United States... That's critical. It is critical, Your Honor. ...has a right not to government-funded counsel... We're not talking about expedited removal of someone who never makes it, quote, into the United States. Exactly. Well, let's just think about that. We have an expedited removal in 1228. The expedited removal in 1228 would allow this petitioner, if he had been expeditedly removed under 1228, he would have got counsel. Correct. But he was removed under 1225, which is not 1228 where Congress suggested he should have counsel, but was under 1225 where they don't suggest he has counsel. Why is it that I should now, with Congress being the one to generally set that out, say it's unconstitutional what you did? First of all, it's not unconstitutional. We're not asking the court to say that the statute's unconstitutional because... Well, then if he was expedited under 1225, and Congress full well knew that there was expedited proceedings under 1228 where he would get counsel, but he was taken under 1225, what gives me the idea Congress didn't know there was a difference? I think that's an excellent question. The reason is... Well, I hope it was because I asked it. Because, Your Honor, 1225 expedited removal includes two very different categories of people. It includes people who are apprehended at the port of entry, and it also includes people who have been inside the United States. That doesn't answer my question. The question is, regardless of who are the characters who may be subject to 1225 removal under the statute, when Congress full well knew that 1225 was not going to get counsel and didn't put it in 1225, and full well knew they had a right to do that because under 1228 they said they should have counsel, why does that make it wrong? The fact that there are two categories of people means that Congress could have chosen to be silent on the issue because it didn't want to make a one-size-fits-all rule that would cover both of those categories of people. Congress might have known that if they said there's no right to counsel, the courts might have said that that violates due process for people who are apprehended inside the United States. And counsel, do I understand that you are not only advocating that we have to give notice of a right to counsel, but that the government must provide it? No, not at all. We are only ñ I thought I understood. You're not saying anything about government funded? We're saying it is not government funded counsel. Not government funded, got it. Only that he has the right to retain counsel at his own expense, certainly. Let's go one further. Why do I have any jurisdiction over this case? You have jurisdiction because this is a criminal appeal and this is ñ Well, I have right here, under 1225, if I look in 1225 as to whether I have jurisdiction, there's a section that talks ñ it's in B, I don't know, 3D says, in any action brought against an alien under 1325A of this title or section 1326 of this title, the court shall not have jurisdiction to hear any claim attacking the validity of an order of removal entered under subparagraph AI, which is this, or B3I. Correct. And in Barajas, Alvarado, the court answered the exact question you're asking. Amen. So why in Barajas, Alvarado, it also said what challenge you're making now is not valid. And the noncitizen in Barajas was an alien apprehended at the port of entry. So what? It's covered under 1325. Well, Your Honor, I would point to Riavaca, where this court said, which came after Barajas, and said that for people apprehended inside the United States, unlike the alien in Barajas, that this is an open question about ñ Well, let's see what it said. I looked at Riavaca, and it says to me that people who they affirm in my book that an immigration officer who issues an expedited removal offer order to a person who has entered the United States must provide notice of the change in admissibility to the defendant and provide him, and this is at 1204, an opportunity to respond. Those are the only rights that Riavaca allowed. Well, I think that that's the question that we're posed with here. What in Riavaca says there's any more than those? Well, we have a long history in this court of cases saying that there is a Fifth Amendment right to counsel in removal proceedings, and Riavaca ñ No, we don't. Barajas Alvarado suggests no right to counsel under 1225, and Riavaca doesn't change it. But in Barajas, the difference is that there was no due process there. Here, the government agrees that due process applies, and where the parties disagree is, what does due process afford? Well, and so you look to the case law to suggest, because Congress didn't think it was necessary. They didn't write it in. They wrote it in 1228. They didn't write it into 1225. In Barajas Alvarado, we said it wasn't necessary. In Riavaca, we did not suggest it was necessary. So I'm trying to figure out, where do I go for all of this idea that you want to bring to us? We have precedent dead on point. If you want to go up and have an en banc court do something about it, how can I undo it? Matthews v. Eldridge is where we go, Your Honor, because Riavaca only says notice and an opportunity to respond in regards to the specific issue. In Riavaca, we were enforcing a regulation. That's correct. And here, you're asking us to hold the regulation unconstitutional. Well, we don't. Yeah. Yeah. Your Honor, the regulation. The regulation says you don't get counsel here, right? And you're asking us to tell us that Matthews v. Eldridge, an interpretation of the Fifth Amendment, requires that we do have counsel. So we're going to have to hold the regulation unconstitutional, which is quite a sea change from Riavaca in which we were enforcing a regulation. I think that that's probably correct, Your Honor. I could make arguments, but I'm probably not going to agree. I'm probably not going to convince you on that. So, yes, I think the court would have to find that the regulation is unconstitutional. But I don't think that that's a stretch here because Matthews v. Eldridge test heavily favors Mr. Peralta. Doesn't it? Why doesn't this just destroy the whole notion of expedited removal? If all of a sudden we have to start giving people notice of their right to counsel, that's not expedited removal at the border for people who are found in a very short distance inside the United States and for which we're trying to save them and us a lot of problems. Well, first of all, it still applies to everyone who's apprehended at the port. Second of all, in the other type of expedited removal, 1228 that Judge Smith referred to, there is the right to counsel, and that has not destroyed it. It's still a very expedited process. So there's nothing in this very minimal right to counsel at one's own expense that would destroy the process or, frankly, put any sort of cost or administrative burden. But all you're asking for is that the authorities, when someone agrees to an expedited After they've been apprehended in the country. Once they're apprehended in the country, they get the full benefits of our civil rights. At a minimum, all we're asking is... And if they agree to expedited removal while someone's been apprehended in the country and they're expeditedly removed, what are the consequences of that? What are they? All that would be if I... See, I'm out of time. If I could just answer. Sure. All it would require... You can talk fast now. Okay. All that it would require is to put a written waiver within the forms that they already sign in expedited removal, that that waiver already exists in 1228. And all we're asking is that you put the same waiver in the paperwork for 1225. I don't think that's so radical. I don't think it's a problem. And in most cases, probably it's going to be waived. In the few cases where it is exercised, it hasn't destroyed the 1228 expedited proceedings, and it won't destroy these. What do I do with... Well, don't they have all these people together when they're expediting them? They have a whole group. They don't do it one at a time, do they? They do a one-on-one conversation, but they often do them in large batches of people. But they do have a one-on-one conversation with each person. So all that would be needed would be to say, now, if you want a lawyer, you can get one at your expense. That's right. That's all. That's it. So what do I... That doesn't gum anything up. And, you know, one time I asked a very dear friend of mine, who's not with us anymore, about congressional intent. I said, now, when... And he was the floor leader of the 64 Civil Rights Act and the 65 Voting Rights Act. He was a lawyer in Van Nuys where I practice law. And I said, well, what was your intent when you voted for this legislation? He said, what are you talking about? I said, well, you know, congressional intent. And he said, well, why is that important? I said, well, because the courts think it is. So what was your intent? And he thought that was funny. He said, my intent was to vote for the legislation that the leadership told me was the best we could get at the time. That was my intent. So they're not looking at the phrase here and something else here and saying, you know, well, you know, it didn't work that way. Mark Twain would agree with me. Maybe what you could do, what do I do with United States v. Grand? Grand, I'm sorry? G-R-A-N-D-E. I am not familiar with that. I'm sorry. Well, that's a case Judge Pregerson wrote or was involved with. I don't know who wrote it because it was not a published decision. But in United States v. Grand, they had the same circumstance we have here. And they looked at Barajas-Alvarado and they looked at Rayavaca. In fact, the majority of Grand devoted to comparing the facts in Grand to the facts of Rayavaca. And they said there is no right to counsel. Well, that was, I have it here. And that was a mistake. No, it was. It was a mistake. It was a mistake. And I know exactly what happened. We were moving quickly. And one of my members of the panel or both of them said, well, you know, this is expedited removal. We got different rules on expedited removal. Uh-oh. I mean, I haven't seen a hell of a lot of expedited removal cases. And it was in a rush. And so that's what happened. I made a mistake. I ask forgiveness for it. I can't answer any better. It makes it interesting that they would have now written a dissent. And the cases that were relied upon in that particular case were overruled. Well, in another case, I mean, your other ideas suggest that somebody ought to, I mean, you also collaterally attack, if you will, also the issue of withdrawal of application for admission. Judge Perkerson also wrote a decision in that, in United States v. Alarcon Tapia. And again, goes against your decision. And I was going to ask you what I do with that. But I guess you'll come back and say I was wrong again. So all I'm trying to say is it seems to me that our case law, Barajas-Alvarado, coupled with our case law, Rehabaca, doesn't get you where you need to go. And therefore, it seems to me that Judge Bybee's question was pretty dead on, because that was my next question. Well, I think if the court has been willing to find the statute unconstitutional, as it did in Barajas, then it's not as far of a step for this court to say that the regulation, which is arguably the only thing here keeping us from a due process right to counsel, is also unconstitutional. I understand your argument. Well, let me point this out. In Alarcon Tapia, there was a mem dispo 2015. I was on the panel. But the alien was found, in other words, he was stopped before entering the United States. Huh? I agree. In all these cases, that's one of the things you look at. In Barajas-Alvarado, the alien was found before entering the United States, so not entitled to counsel. The alien was found before entering the United States. Once you enter the United States, then the due process clause applies. In Alarcon Tapia, the alien was found before entering the United States. And in Grande, the panel relied mistakenly on Barajas-Alvarado. Which was a pre-Raya-Vaca case. So, anyway. I heartily agree. Counselor, I think we understand your argument. I will give you a minute to respond to the government. Thank you, Your Honor. Let's hear from the government. Good morning, Your Honors. And may it please the Court. Michelle Wasserman on behalf of the United States. Your Honors, the appellant in this case has failed to establish a due process violation. And has failed to establish prejudice. Therefore, his 2012 expedited removal, he has not shown that that expedited removal was fundamentally unfair. And this Court should affirm the District Court's denial of his motion to dismiss Count 2 of the indictment. Starting first with the due process violation. Counsel represented to this Court that somehow adding this right to counsel would not come up the works. Would not eviscerate an expedited removal proceeding. That is absolutely untrue. In 1228, which is the other expedited removal proceedings. Those are for aggravated felons. These are individuals who are already in the country. Likely already in custody.  Because as this Court is well aware, issues of whether someone is an aggravated felon or not can get very tricky. The expedited removal proceedings in 1225 are an entirely different animal. These are reserved for really two classes of aliens. Aliens who are arriving at the border. And aliens who are like Mr. Peralta are found a very short distance inside the United States. After a very short period of time. For those individuals, providing a right to counsel would take a procedure that is intended by Congress to be expeditious. And make it entirely un-expeditious. These individuals, as this Court is well aware, once a right to counsel is provided. Well, what if we just put it on the form? That's what I understood Ms. Harsler to be suggesting. Was that we just put it on the form and she said, you know, most of them will just waive it. And, Your Honor, I don't think the Court can assume that most of them will just waive it. I think as this Court's precedent as cited by my opponent in her briefing shows. For the right to counsel, if there is such a right, which we obviously disagree with. For that right to be meaningful, the alien has to have the opportunity to find counsel. To consult with counsel. And all of that takes time. In fact, most of the cases cited by the appellant talk about how the immigration judge in those cases violated the right to counsel. Because he didn't give the alien enough time. So there's multiple continuances. And during this time period, just so the Court is aware, because these individuals are found either at or very near the border, they're not held for a lengthy period of time. This is a very quick process. So it's going to take weeks of time for an individual to have the opportunity to get a lawyer. The person has to be housed somewhere. They have to be clothed. They have to be fed. Obviously, pursuant to this Court's precedent, they can't be housed there indefinitely. They need to have a place to meet with counsel in a meaningful way. There are not facilities for that at this point. These individuals are primarily brought to border patrol stations and then processed and removed back to Mexico. But these border patrol stations are spread out in the middle of nowhere. These individuals are apprehended in the desert. So again, this is not something where you can just put it on a form and they can waive. What if they don't? Suddenly you have this whole new class of people who are creating an extreme administrative burden who would have to be then provided all sorts of additional... If someone is apprehended in the United States and they're asked if they want to have their matter expedited, and they say, yeah, okay, fine, and they're expeditiously removed, what are the consequences of that for them to come back to America? And I guess the Court's question, this is a deportation. So once the individual is given the expedited removal, they have been formally deported from the United States, and they are then removed to Mexico. Well, just tell me what the consequences. That's all I ask you. Do they have a 10-year bar at that point? Does that count as towards the 10-year bar of returning to the United States? So actually, if the Court looks in the excerpts of record at 204, Mr. Peralta Sanchez was expeditiously removed for five years. You talk so fast, I don't even know what you're saying. Ms. Hartzler and I have the same issue. According to the record, Mr. Peralta was expeditiously removed for five years. It was a five-year bar from returning. Is that statutory? Your Honor, I believe that there are different boxes on the form that the immigration officer can check. Depending on the individual's criminal history, I believe that different boxes can be checked depending on that, but I would be happy to look into that for the Court. But in this case, it was a five-year bar. Well, if people are expeditiously removed who have not entered the United States, and they're expeditiously removed, what are the consequences to them if they return? And I believe what the Court is getting at is that for all these individuals who have received a prior deport, they could be potentially subject to criminal prosecution. You should talk a little slower, Your Honor. All right, I apologize. That all of these individuals could potentially be, once you have a formal removal, they could be subject to criminal prosecution for returning after deportation. Well, but if they ever come back again, in other words, they get stopped before they cross their line, and they agree to expeditiously be removed, and that happens. Now, if they want to come back, don't they have to go through a process, get on a list, come back legally? Your Honor, that is... And that puts them way at the end of the line. Well, Your Honor, the expedited removal proceedings apply to individuals who have no valid entry documents. So, yes, if they are expeditiously removed, they have no right to enter the United States. They have no valid entry documents. So it's not as if you're taking individuals who have some right to be here and removing them from the United States. You're taking individuals with no right to be here and putting them back in the same situation they would have been had they decided to follow the rules. And I believe one of these things that this Court and the Supreme Court... Well, is there any additional barrier to it? They want to come back, but they've been expeditiously removed, and they want to go through a legal process. So, Your Honor, in terms of what other loop... Obviously, there is a process that they would have to go through. I think that there is a 10-year waiting period for the Attorney General to wait. They would have to apply for permission to reenter. I think there's actually a 10-year waiting period before the Attorney General can waive that requirement. The point is that for this particular defendant, for Mr. Peralta, he didn't... Well, maybe that hadn't been my understanding, but I'll double-check it. And, Your Honor, perhaps I'm misunderstanding the Court's question. There are steps that an alien like Mr. Peralta could have taken outside the United States if he wanted to come back here illegally. But the point is that he didn't take those steps. He kept coming back illegally time after time after time. He's deported in 1999. The order's reinstated a number of times. And then he comes back in 2012. He gets the expedited removal order. He continues to come back. And so this is not somebody who's trying to follow the legal process. This is somebody who is not. And that person should not be in a better position than somebody who does try to follow the rules. Well, it's all right. I'll check it out myself. Your Honor, and I apologize. I wasn't prepared to answer that question. Listen, the immigration laws are more complex than the Internal Revenue Code, so don't worry about it. This is true. And, Your Honor, I... Everybody's supposed to know them, though. Immigration law. Well, in this case, you know, again, I think that the... In this case, it's not as if there was no process provided to Mr. Peralta. As this Court pointed out, in Rayo Vaca, this Court talks about for individuals like Mr. Peralta, there's an opportunity for notice and an opportunity to be heard. And that's provided for by the statutory regulations. So he's provided by the statutory regulations, by the regulations and the statute, all of the process that would be required to make his removal fundamentally fair. You know, including... And in addition, although I see my time is running out, I would just note for the Court that even if this Court were to have a problem with the due process prong, Mr. Peralta has absolutely failed to establish that he was prejudiced in any way by either the lack of counsel, because counsel could not have done anything here, or that he was eligible for withdrawal of his application for admission. And with that, unless the Court has further questions, I would submit. Okay. Thank you, Ms. Wasserman. Ms. Hartzler? Let me ask you this. Where are... There's a requirement that you pick up an alien in this country that you need to notify, say, someone from Mexico. You need to notify the Consul General. Is that being followed? I don't know. It's the Vienna Convention, I believe, that you're... What? It's the Vienna Convention where there has to be... You have the right to have your consular officer notified. Is that what you're referring to? Yeah. That's what I'm talking about. Yes. I'm not sure if that's being followed in these proceedings or not. Not in these proceedings. Is it being followed generally at the border? In my experience, when people do request it, it is frequently being followed. Are they notified of it? When the person asks the consulate to be notified. When they don't ask, there's no notification. So they're not told about that requirement. That's right. Your Honor, I just want to briefly touch on prejudice because the government raised it. I'd like to point out that the government has never responded to our argument that an attorney could have helped Mr. Peralta to basically ask for a non-protonc waiver. We cited at least three IA published decisions on that. And this court in Via Angiano said that that's the exact type of thing that counsel could do on behalf of someone like Mr. Peralta. So I believe we have established prejudice. And then the last point I'd like to just leave the court with is this. The government is trying to have it both ways. To the extent that the government is saying that this would be a huge administrative burden on it while we disagree with it, the government then needs to say, all right, well, if we're going to streamline this process, if we're going to make it incredibly expedited, then we can't use it as an element of a 1326 prosecution. We can either decide that we're going to give these due process rights and then use it to a future reentry to prosecute. Or we can say if this proceeding is expedited, then these proceedings are not solid enough to be able to use them as an element of a criminal offense. And so that's all we're asking for and that we'll leave the court with. Okay. Thank you, Your Honor. Thank you very much. I thank both counsel for the argument. The case of Peralta Sanchez is ordered submitted.
judges: Pregerson, Bybee, N.R. Smith